IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES D. CONWAY JR.

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Civ. No. 6:16-cv-02368-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Charles Conway Jr. brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for Title II disability insurance benefits (DIB) and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff submits that the ALJ's conclusion that Plaintiff did not meet Listing 1.04A at step-three was unreasonable.

1 – OPINION AND ORDER

Plaintiff also contends that the ALJ did not give sufficient consideration to the medical evidence and symptom testimony in the record. Finally, Plaintiff objects to the ALJ's assessment of Plaintiff's residual functional capacity. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed an application for DIB and SSI on November 15, 2011, alleging disability onset on June 28, 2010. Tr. 18. His application was initially denied on April 10, 2012 and again on reconsideration on August 28, 2012. *Id*. A hearing was held on October 17, 2013. A supplemental hearing based on new evidence was held on April 30, 2014 and Plaintiff's onset date was amended to October 14, 2010. *Id*. On July 11, 2014, the ALJ found that Mr. Conway was not disabled. *Id*. The case was then remanded from the Appeals Council on December 4, 2015. *Id*. A subsequent hearing was held on June 3, 2016 and the ALJ issued an unfavorable decision on July 7, 2016. Tr. 35. The Appeals Council denied review on October 24, 2016. Tr. 1-7.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the

administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson*, 359 F.3d at 1193; *Aukland v. Massanari*, 257 F.3d 1033, 1034-35 (9th Cir. 2000) (when evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). A court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th. Cir. 2008).

The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995). *See also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence).

## **DISCUSSION**

### I.     **ALJ's Findings**

The Social Security Administration uses a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect

to the first four steps, the burden shifts to the Commissioner at step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity, age, education, and work experience. *Id.*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of October 14, 2010. Tr. 21. At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, status post laminectomy with recurrent herniation at L4-5; obesity; and status post right wrist fraction with open reduction/internal fixation (ORIF). Tr. 21-22. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment that would be *per se* disabling. Tr. 22-23. The ALJ found Plaintiff had the residual functional capacity to perform sedentary work with the following additional limitations:

> He is limited to sitting 5 hours in an 8-hour day, standing 2 hours in an 8-hour day, and walking 1 hour in an 8-hour day. He requires the option to alternate positions at will and can sit for 1 hour at a time, stand for 30 minutes at a time, and walk for 10 minutes at a time before needing to change positions. He will remain on task while doing so. The claimant requires the option to use a cane in the workplace with one hand. This will not affect his ability to lift. The claimant is limited to no climbing of ramps, stairs, ladders, ropes, or scaffolds. He is limited to frequent balancing. He is limited to occasional stooping. He can never crouch, kneel, or crawl. He is limited to frequent pushing, pulling, handling, reaching, fingering, and feeling with the dominant (right) upper extremity. The claimant is limited to no operation of foot controls. He is limited to no concentrated exposure to vibration. The claimant is limited to no exposure to hazards, such as unprotected heights, moving mechanical parts, or large moving equipment. He is limited to no exposure to extreme cold and wet conditions.

Tr. 23.

The ALJ did not entirely accept Plaintiff's subjective pain and symptom testimony. Tr. 24-33.

At step four, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 33. At step five, relying on vocational expert testimony, the ALJ found there were jobs existing in significant numbers in the national economy that Mr. Conway could perform, including representative occupations that were sedentary and unskilled, such as final assembler; packager, sealer; and addresser. Tr. 34. The ALJ concluded Plaintiff had not been under a disability within the meaning of the Act from October 14, 2010, through the date of the decision on July 7, 2016. Tr. 19, 34-35.

## II.     Listing 1.04A

The listings set out at 20 C.F.R. pt. 404, subpt. P., app. 1 describe, for each major body system, impairments that are severe enough to be *per se* disabling. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The plaintiff has the burden of proving that his impairments meet all the specified medical criteria. *Sullivan v. Zebley*, 49. U.S. 521, 530 (1990). If a claimant's impairment matches or is equivalent to a listed impairment, then he is presumed unable to work and is awarded benefits without a determination of whether he can actually perform prior work or other work. *Id*. at 532. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan*, 493 U.S. at 532).

The ALJ found that Plaintiff did not meet listing 1.04A for disorders of the spine. To meet listing 1.04A for disorders of the spine, an individual must meet all of the following criteria:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation or motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflect loss

and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, listing 1.04A

Plaintiff challenges the ALJ's finding and argues that his impairments meet all of the specified medical criteria: he has two herniated discs in the lumbar spine and these herniated discs clearly result in compromise of multiple nerve roots, one which is "crushed." (6F). There is evidence of nerve root compression characterized by neuro-anatomic distribution of pain, as shown on examination on 7/23/13 by orthopedic surgeon Dr. Malos. (7F). Muscle weakness exist throughout the right lower extremity, as noted on exam by Dr. Lynn, MD on 3/28/2013. (8F/14). There is sensory loss in the right foot, as noted on exam by Dr. Malos on 7/23/13. (7F/2-3). There are multiple positive straight-leg raising tests on exam. (1F/15; 7F/2-3; 10F). Tr. 390-1.

The ALJ provided three reasons for finding that Plaintiff did not meet listing 1.04. First, the ALJ concluded that the findings reported by multiple medical sources were disparate, suggestive that Plaintiff's symptoms were "intermittent in nature, and thus do not rise to listing-level severity on a consistent basis." Tr. 23. Second, the ALJ considered Dr. Lynn's documentation of objective medical evidence to be inadequate. Tr. 23. Third, the ALJ found the report of occasional footdrop to be based on Plaintiff's self-reporting and was not observed in a clinical setting. Tr. 23, 484.

### A. Symptoms "intermittent in nature"

As to the first stated reason, treating physician, Dr. Lynn, notated muscle weakness on multiple visits. Tr. 23; 439; 462; 481-2; 529; 534. Sensory loss was not documented though in Dr. Lynn's treatment notes ranging in time from August 7, 2012 to July 23, 2013. Tr. 23, 464-94, 501-11. In July 2013, consulting neurosurgeon, Michael Malos, M.D., performed a neurologic examination of Mr. Conway, and reported that Plaintiff exhibits normal reflexes and no lower

extremity motor weakness. Tr. 23; 465. Dr. Malos noted sensory loss observing "diminishment to light touch over the dorsum of his right foot." *Id*. Four months later in November 2013, plaintiff was seen by second consultative examining physician, John H. Ellison, M.D. Dr. Ellison observed that the plaintiff exhibited normal coordination, motor strength, *sensation*, and reflexes with no sign of atrophy. Tr. 23, 502. Based on the disparate medical findings, the ALJ found the symptoms to be "inconsistent."

### B. Documentation of objective medical evidence

Second, the ALJ considered Dr. Lynn's documentation of objective medical evidence to be inadequate. Tr. 23. Under the listings regulations, the physical examinations "must include a detailed description of the rheumatological, orthopedic, neurological, and other findings appropriate to the specific impairment being evaluated." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00.D. The regulations state that "[a]lternative testing methods should be used to verify the abnormal findings; e.g., a seated straight-leg raising test in addition to a supine straight-leg raising test." *Id*. "[A] report of atrophy should be accompanied by measurement of the strength of the muscle(s) in question generally based on a grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00.E.

The ALJ noted that Dr. Lynn referred to right lower extremity weakness without identifying the affected muscle group or dermatome (i.e. an area of the skin supplied by nerves from a single nerve root of the spinal cord). Tr. 23. For example, at one examination, Dr. Lynn examined Mr. Conway and noted a normal range of motion with "[w]eakness throughout RLE" (right lower extremity). Tr. 481. Another time, Dr. Lynn stated broadly, "Strength is diminished in right lower extremity." Tr. 488. The ALJ noted that Dr. Lynn did not list the degree of

weakness based on the standard 5/5 scale. Tr. 23. Here, Dr. Lynn failed to specify the location of the abnormality, and did not the results of any detailed testing.

### C. Footdrop

Third, the ALJ considered Dr. Lynn's report of occasional footdrop, finding that it appeared to be by patient reporting only and not observed in a clinical setting. Tr. 23, 484. Dr. Ellison also saw no evidence of footdrop upon examination. Tr. 23, 502 ("[I]ntermittent left footdrop not apparent today.") The listings regulations state that "physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g., 'He says his leg is weak, numb'" 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00.D. Here the ALJ reasonably concluded that Plaintiff did not meet all of the criteria of listing 1.04A.

### III. ALJ reasonably evaluated Plaintiff's subjective testimony

When deciding whether to accept the subject symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairment which could reasonably be expected to produce some degree of symptom. *Ligenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only show that it could reasonably have caused some degree of the symptom. *Id*. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id*. the ALJ "must specifically identify the testimony she or he finds not credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings

are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id*.

Plaintiff argues that the ALJ's reasoning for rejecting Plaintiff's testimony was not supported by substantial evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (The ALJ's reasoning must be supported by substantial evidence.) Plaintiff's imaging study demonstrated severe central canal stenosis at L4-5 that "crushes" the right L5 nerve root, which could reasonably expect to cause the severity of Plaintiff's symptoms. Tr. 465. The ALJ noted that the Plaintiff reported ongoing back pain accompanied by physical exams demonstrating discomfort, tenderness, decreased strength and foot drop. Tr. 27.

The ALJ provided four reasons for finding Plaintiff's subjective testimony less than fully credible. First, the ALJ noted that Plaintiff failed to follow through with Dr. Malos' recommendations for surgery made in July 2013. Tr. 27, 29, 466. In December 2013, Dr. Lynn noted that Plaintiff was "continuing to have quite a bit of pain, no changes. He continues to not want to get surgery – he is the process of appealing disability." Tr. 514. The ALJ found that Plaintiff's "failure to follow through with treatment recommendations is inconsistent with the claimant's allegations of debilitating pain and suggests his symptoms may not have been as serious as alleged." Tr. 29.

Second, the ALJ considered Plaintiff's activities of daily living, and concluded that at times his activities were somewhat greater than reported. Plaintiff's "reported activities of daily living reasonably suggest that he retains significant work-related functioning." Tr. 26-7. The ALJ noted that contrary to Plaintiff's allegations of disability he independently managed the household and remained the primary caregiver for his adolescent daughter (10 years old at the alleged onset date, 15 years old at the time of the 2016 hearing). Tr. 29, 54. Plaintiff prepared

meals, drove, went shopping, read, walked, and watched television, stating that he could sit "for a decent amount of time." Tr. 29, 346-47. Plaintiff independently managed his personal care, performed household chores, including vacuuming, laundry twice a week, and dishes. Tr. 24, 29, 246. He shopped at least once a week, anywhere from 15 minutes to three hours. Tr. 346. The ALJ further noted that Plaintiff traveled out of state, attended weddings, housesat for his sister, and went on a camping trip. Tr. 22, 29-30, 408, 469, 472, 512. For instance, in June 2013, Plaintiff drove to California to housesit for his sister. Tr. 472.

Third, the ALJ found that Plaintiff's inconsistent statements, and the inconsistencies in the medical record, undermined his symptom testimony. Tr. 26, 28, 29. For instance, on Plaintiff's function report in February 2012, he claimed difficulty walking for prolonged periods, but he also reported he could walk up to two miles. Tr. 24, 348. The ALJ considered that when Plaintiff first stopped working in June 2010, he alleged this was due to his medical conditions. Tr. 26. Plaintiff later stated that he was laid off from his job in June 2010. Tr. 381. Four months later in October 2010, he hurt his back cleaning out a garage. Tr. 26, 415. Plaintiff filed for disability beginning in June 2010, stating it was because of his condition. Tr. 311, 336. He eventually amended his onset date to reflect the date he was cleaning his garage. Tr. 18, 26, 90-91, 127-28. The ALJ considered these inconsistencies as undermining Plaintiff's allegations. Tr. 26. Fourth, the ALJ noted inconsistencies in the medical record, notating that the objective medical testing at examinations was largely normal. Tr. 28. Here, the ALJ provided multiple reasons supported by substantial evidence for discounting the Plaintiff's subjective testimony.

### IV. ALJ reasonably assessed physicians' opinions

"Where the treating doctor's opinion *is not contradicted* by another doctor, it may be rejected only for "*clear and convincing* reasons." *Lester v. Charter*, 81 F.3d 821, 830 (9th Cir.

1995). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing *specific and legitimate* reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Lester*, 81 F.3d at 830). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester,* 81 F.3d at 830. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

### A. Dr. Lynn

In this instance, Plaintiff's treating physician Dr. Lynn filled out a Spinal Disorder Residual Functional Capacity Questionnaire in June 2012, and a Physical Residual Functional Capacity Form in September 2013. Tr. 30-31, 438-445, 495-500. In both Dr. Lynn indicated that Plaintiff had extremely restrictive limitations. *Id*. For example, Dr. Lynn opined that Plaintiff would miss three or four days of work per month. Tr. 442, 500.

The ALJ gave little weight to Dr. Lynn's opinions, finding them to be "internally inconsistent." Tr. 31. The ALJ noted that overall the medical evidence of record did not contain objective findings that would reasonably support the degree of limitation that Dr. Lynn alleged. Tr. 28. The ALJ took issue with Dr. Lynn's opinion that Plaintiff could never stoop while also opining that Plaintiff could sit, which includes bending at the waist. Tr. 31. Additionally, Dr. Lynn opined that Plaintiff could not sit for more than 20 minutes continuously (Tr. 443, 497), but Plaintiff said he could sit for up to 40 minutes. Tr. 31. The ALJ also rationalized that Dr. Lynn's opinion was not supported by Plaintiff's activities of daily living, and imagining studies showing Plaintiff's condition remained stable since at least April 2013. Tr. 639, 647. Finally, even if there

was error in not incorporating "no stooping" into the residual functional capacity, two of the three jobs identified by the vocational expert do not require any stooping: final assembler and addresser.

   **B. Dr. Ellison**

   Dr. Ellison observed that Plaintiff has a mild right antalgic gait and used a cane but could heel, toe, and tandem walk. Tr. 31, 502. He had normal muscle strength, bulk, and tone with no signs of atrophy; normal sensation and reflexes; and a negative Babinski sign bilaterally. Tr. 31, 502. Dr. Ellison opined that Plaintiff could frequently lift up to 10 pounds and occasionally lift up to 20 pounds. Tr. 23, 504. He opined that Plaintiff could sit for one hour at a time, four hours total; and stand for 30 minutes at a time, three hours total; and walk for 10 minutes at a time; for one hour total in an eight-hour day. Tr. 32, 505.

   Similar to Dr. Lynn, the ALJ gave little weight to Dr. Ellison's opinion, reasoning that it was internally inconsistent and inconsistent with the record as a whole. Tr. 32. For example, Dr. Ellison opined that Plaintiff could never stoop, yet he also opined that he was capable of sitting. Tr. 32, 507. Dr. Ellison's opinion that Plaintiff could lift and carry up to 20 pounds occasionally was inconsistent with his other statements that Plaintiff needed a cane. Tr. 32, 501, 502, 504. Dr. Ellison's opinion that Plaintiff could never balance was contrary to Plaintiff's ability to stand and walk. Tr. 32, 507.

   While the evidence in this case is susceptible to more than one rational interpretation, the court must uphold the ALJ's interpretation so long as the ALJ provided *specific and legitimate* reasons that are supported by substantial evidence. *Tommasetti*, 533 F.3d at1038. The ALJ has done so here.

## **CONCLUSION**

12 – OPINION AND ORDER

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 10th day of September, 2018.

      /s/Michael J. McShane      
Michael J. McShane
United States District Judge